FILED
2021 Oct-20 PM 03:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JUSTIN SULLIVAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | _____ |
| vs. | ) | |
| | ) | |
| **MJTV, LLC d/b/a JIMMY'S LOUNGE,** | ) | **JURY DEMAND** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**I.   JURISDICTION**

1. The jurisdiction of this Court is invoked pursuant to the Act of Congress known as 28 U.S.C. §§ 1331, 1334(4), 2201, and 2202, 42 U.S.C. § 2000e *et seq.* This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Acts of 1964," as amended. 42 U.S.C. § 2000e *et seq.*, the "Civil Rights Act of 1991" and 42 U.S.C. § 2000 *et seq.* providing for injunctive and other relief against race discrimination in employment.

2. Plaintiff timely filed his charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff further filed his race discrimination suit with 90 days after receipt of her right-to-sue letter issued from the EEOC.

## II. PARTIES

3. Plaintiff Justin Sullivan is an African-American citizen of the United States and a resident of the State of Alabama. At all time relevant tot his lawsuit, the plaintiff was employed by the Defendant at its Madison, Alabama location.

4. Defendant MJTV, LLC d/b/a Jimmy's Lounge, is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964,' as amended, by the "Civil Rights Act of 1991," 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. Defendant operated a nightclub in Madison, Alabama, featuring topless exotic dancing.

## III. FACTS

5. Mr. Sullivan was employed by Defendant working security and other functions set forth below from January of 2019 until December 5, 2019.

6. In January of 2019, Mr. Sullivan began working at Jimmy's Lounge, located at 8700 Highway 72, in Madison, Alabama.

7. When Mr. Sullivan first started working at Jimmy's, he worked Thursdays only. In the beginning, Mr. Sullivan worked most weekdays; but by approximately late April of 2019, he was working seven days a week at the Club. Typically, he would work from 8:00 p.m. to 4:00 a.m., and until 5:00 a.m. on Fridays and Saturdays.

8. Jimmy's was a nightclub that featured exotic, topless dancing. Mr. Sullivan's job at Jimmy's included working the door, providing general security, working the dance booths, and keeping up with whether the dancers paid their fees to dance at the Club.

9. Mr. Sullivan also collected fees for private dances done by the dancers for customers in an area of the Club with partitions called dance booths.

10. Things at the Club worked fine for Mr. Sullivan through September, and although he would sometimes heard racial comments about the black dancers, as it was well known that the Club only wanted two black dancers per shift. Mr. Sullivan was told by Jimmy's management not to hire too many black dancers. So, on the same day, Mr. Sullivan would be forced to turn away a black dancer, and hire a white dancer. Mr. Sullivan told management this wasn't right, and he was told that management wanted it that way, and he had no choice.

11. On one occasion in approximately February of 2019, Michael Holt, who was managing the Club at the time, came in and terminated several black dancers to keep the racial composition of the dancers at the Club majority white.

12. Mr. Holt said on more than one occasion, "Damn, why does it look like Boomers in here?" Boomers is another club in Madison that has a largely black clientele. It was obvious that Mr. Hold did not want "too many" black dancers in the Club, as he thought it would attract "too many" black customers.

13. Before late September, at the end of the shift, Mr. Sullivan would count the money form the door, tip outs, dance fees and disc jockey payments, and put them in the safe located in the office. There would be a written statement of the monies by area collected, taken from the sheets from each area.

14. In late September of 2019, the Club was robbed after Mr. Sullivan left at 5:00 a.m.

15. Immediately, both Michael and James Holt suspected that Mr. Sullivan had staged the robbery and kept the money. This was just not true.

16. Michael Holt called Mr. Sullivan and told him that the Club had been robbed. Mr. Sullivan was accused of taking the money. He steadfastly denied the accusation.

17. Mr. Sullivan even suggested that Jimmy's management check the Burger King camera that would have captured him leaving prior to the robbery.

18. After the robbery, things changed. For a few days, Michael Holt would come to the Club at closing, and pick up the money. After that, Mr. Sullivan no longer put the money in the safe. He had to take the cash and accounting and bring it to Michael Holt at his home after each shift.

19. Mr. Sullivan heard more racial comments comparing the Club to Boomers, and complaining about the racial composition of the customers.

20. Finally, after working on Wednesday, December 4, 2019, Mr. Sullivan brought Michael Holt the money, Mr. Sullivan per the usual practice. He received a call from Michael Holt on Thursday, December 5, 2019. He told Mr. Sullivan he could no longer work at Jimmy's. The reason given was that James Holt, who was apparently still involved in the operation of the Club, wanted to bring in "his people", which were all white people. Mr. Sullivan was replaced by a white employee for no other reason than he was not one of James Holt's (white) "people".

21. After the robbery, Mr. Sullivan was terminated due to his race in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

## IV.   CAUSES OF ACTION

### A.   RACE DISCRIMINATION

22. The Plaintiff re-alleges and incorporates by referenced paragraphs 1-21 with the same force and effect as if fully set out in specific detail hereinabove.

23. Mr. Sullivan was treated differently on account of his race in regards to his termination.

24. Defendant has no legitimate non-discriminatory reason for its conduct.

25. Because of such conduct, the Plaintiff has suffered loss of income and employment, as well as severe emotional distress, embarrassment, and humiliation.

26. Defendant's actions were willful, with malice, and with reckless disregard.

27. Plaintiff seeks to redress the wrongs alleged herein and this suit is his only means of securing adequate relief. The Plaintiff is not suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

28. Plaintiff does not anticipate any difficulties in the management of this litigation management of this litigation.

B. **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and custom of the Defendant are violative of the rights of the Plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, by the "Civil Rights Act of 1991". 42 U.S.C. § 1981 through U.S.C. § 1983.

2. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the

Defendant and at the Defendant's request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended by the "Civil Rights Act of 1991". 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981 through U.S.C. § 1983.

3. Enter an order requiring the Defendant to make the Plaintiff whole by awarding back-pay (plus interest), front-pay, punitive damages, compensatory damages, nominal damages, declaratory relief, injunctive relief, and reinstatement.

4. The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited to, an award of costs, attorney's fees and expenses.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted,

 /s/ Brian M. Clark
Brian Clark
Attorney for Plaintiff

**OF COUNSEL:**
Wiggins Childs Pantazis Fisher & Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone:  (205) 314-0500
Facsimile:  (205) 254-1500
Email:  bclark@wigginschilds.com

**SERVE DEFENDANT AT THE FOLLOWING:**

James M. Holt
920 Yarbrough Road
Harvest, Alabama  35749