UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JUSTIN SULLIVAN, ) ) Plaintiff, ) ) v. ) ) MJTV, LLC, d/b/a Jimmy's ) Lounge, ) ) Defendant. ) | Civil Action Number **5:21-CV-01407-AKK** |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Justin Sullivan's motion for a default judgment on his Title VII and 42 U.S.C. § 1981 employment discrimination claims against MJTV, LLC. Doc. 31. Sullivan previously obtained the clerk's entry of default. Doc. 29. As explained below, a default judgment is warranted as to MJTV's liability. The court will set this matter for an evidentiary hearing as to Sullivan's damages.

**I.**

"Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit against it for more than two months after being served," default judgment may be appropriate. *Natures Way Marine, LLC v. N. Am. Materials, Inc.*, No. 08-0005-WS-B, 2008 WL 801702, at *2 (S.D. Ala. Mar. 24, 2008). Under Federal Rule of Civil Procedure 55 and upon motion, the court may enter a default judgment after the clerk enters a default. FED. R. CIV. P. 55(b)(2);

*Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985). But a default does not automatically lead to a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Rather, a default indicates a defendant's admission of the factual allegations, which may or may not establish liability. *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356-57 (S.D. Ga. 2004); *see Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997).

Thus, the court must still determine whether "a sufficient basis in the pleadings" warrants the entry of judgment. *See Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1245 (11th Cir. 2015). The Circuit has interpreted this standard "as being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id.* "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *Id.* Consequently, the court will enter a default judgment when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II.[1]

Sullivan, who is African American, formerly worked for MJTV as a security guard at Jimmy's Lounge in Madison, Alabama. Doc. 1 at 2. Sullivan's job at

---

[1] Because MJTV's failure to appear or respond to Sullivan's lawsuit constitutes an admission of the factual allegations, *see Chudasama*, 123 F.3d at 1370 n.41, the court recounts the following from Sullivan's complaint, doc. 1, and accepts it as true.

Jimmy's Lounge, "a nightclub that featured exotic, topless dancing," included "working the door, providing general security, working the dance booths, and keeping up with whether the dancers paid their fees to dance at the Club." *Id.* at 3. During his employment, Sullivan "sometimes heard racial comments" about the Black dancers, and management told Sullivan not to hire "too many" Black dancers despite Sullivan's protests. *See id.* On one occasion, Michael Holt—one of the club's managers—discharged several Black dancers "to keep the racial composition of the dancers at the Club majority white." *Id.*

One early morning in September 2019, after Sullivan left work, Jimmy's Lounge was robbed. *Id.* at 4. Michael Holt and James Holt suspected Sullivan, who denied the allegations, and imposed certain new requirements on him, including that he "take the cash and accounting and bring it to Michael Holt at his home after each shift." *Id.* Sullivan began to hear more racist comments about Jimmy's Lounge, including "complaining about the racial composition of the customers." *Id.*

On December 5, 2019, Michael Holt discharged Sullivan. *Id.* at 5. Michael Holt told Sullivan that the reason "was that James Holt, who was apparently still involved in the operation of the Club, wanted to bring in 'his people,'" who were all white. *Id.* Sullivan was subsequently "replaced by a white employee for no other reason than he was not one of James Holt's (white) 'people.'" *Id.*

3

Sullivan thereafter suffered the "loss of income and employment, as well as severe emotional distress, embarrassment, and humiliation." *Id.* Sullivan now sues MJTV seeking a declaratory judgment; a permanent injunction against further civil-rights violations; reinstatement; and compensatory damages, including backpay.[2] *See id.* at 7. He also seeks his attorney's fees, costs, and expenses. *Id.*

### III.

Accepting these allegations, the court must determine whether they amount to Title VII and § 1981 liability. Title VII prohibits discrimination by employers in the "terms, conditions, or privileges of employment" because of an employee's race. 42 U.S.C. § 2000e-2(a)(1). Similarly, § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts," including employment contracts, "and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." *See* 42 U.S.C. § 1981(a). In this Circuit, "Title VII and Section 1981 discriminatory-discharge claims [are] parallel causes of action with the same standards of liability and proof." *Lovett v. Ga.-Pac. Consumer Prods., LP*, 418 F. Supp. 3d 1311, 1319 (S.D. Ga. 2019).

---

[2] In the instant motion, Sullivan represents that "injunctive relief in the form of reinstatement is not possible as MJTV is no longer in business." Doc. 31 at 1.

To support his claim of intentional discrimination, Sullivan must show a "tangible adverse effect" on his employment and MJTV's "discriminatory intent" through direct or circumstantial evidence. *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920 (11th Cir. 2018). It is unrebutted that Michael Holt discharged Sullivan for the purpose of replacing Sullivan, who is African American, with James Holt's "people" and that MJTV did replace Sullivan with a white employee. Doc. 1 at 5. Sullivan's discharge certainly counts as an adverse effect on his employment, and the proffered reason about James Holt's "people," paired with the undisputed assertion that MJTV discharged Sullivan to employ only white people, clearly constitutes direct evidence of discriminatory intent.[3] Sullivan has plausibly established MJTV's liability on his discriminatory-discharge claims under Title VII and § 1981, and a default judgment is warranted.

## IV.

Based on these claims, Sullivan seeks $35,000 in damages: $8,700 in back pay "from not holding a job from December 5, 2019, until March 1, 2020" at his prior wage of $100 per day; $11,850 in back-pay "from having to accept lower paying work at $50.00 per day from March 1, 2020, until October 24, 2020"; and $15,000 in mental anguish damages. *See* docs. 31 at 3; 31-1 at 4. As with any

---

[3] "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Lovett*, 418 F. Supp. 3d at 1319 (quoting *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1262, 1286 (11th Cir. 2000)).

5

default-judgment motion, the court must confirm a legitimate basis for this damages amount. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). Because Sullivan's claims are not "for a sum certain or a sum that can be made certain by computation," the court will hold an evidentiary hearing to "determine the amount of damages." *See* FED. R. CIV. P. 55(b); *Anheuser Busch*, 317 F.3d at 1266–67. *See also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1985).

## V.

In sum, Sullivan's allegations, to which MJTV has not responded, plausibly amount to intentional discrimination in violation of Title VII and § 1981. Accordingly, the court **GRANTS** his motion, doc. 31, as to MJTV's liability and will enter a default judgment to that effect after determining the amount of damages. To that end, the court will hold an evidentiary hearing via videoconference at 4 p.m. on August 23, 2022. The clerk is **DIRECTED** to mail a copy of this order to MJTV.[4]

**DONE** the 29th day of July, 2022.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[4] The court will circulate Zoom videoconference information via email in advance of the hearing. To the extent that MJTV wishes to attend, it should have a representative file a notice of appearance or otherwise contact the court at the chambers email address.